UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| EUGENE R. ROBINSON, | ) | CIV. 08-4084-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING IN PART AND |
| | ) | GRANTING IN PART |
| JANET NAPOLITANO, SECRETARY, | ) | DEFENDANT'S MOTION FOR |
| Department of Homeland Security, | ) | SUMMARY JUDGMENT |
| Transportation Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Janet Napolitano, moves for summary judgment. Plaintiff,
Eugene Robinson, opposes Napolitano's motion. For the reasons stated
below, Napolitano's motion for summary judgment is granted in part and
denied in part.

**FACTUAL BACKGROUND**

Viewed in the light most favorable to Robinson, the nonmoving party,
the facts are as follows:

Robinson applied for a supervisory baggage screener position with the
Transportation Security Administration (TSA). (Application for Employment,
Docket 32-3, Ex. 2 at 1.) On August 21, 2002, Robinson passed the
electronic portion of the TSA employment process. (Docket 34-2, Ex. 21.)
On August 27, 2002, Robinson passed the second part of TSA's employment
process. (Docket 34-3, Ex. 22.) Robinson was hired by TSA to be a

supervisor of baggage screeners on November 10, 2002. (Docket 32-10, Ex. 9 at 2.) Robinson then completed the required classroom training and the on-the-job training in November and December of 2002. (Docket 32-5, Ex. 4 at 2; Docket 32-8, Ex. 7 at 1, 4.)

During the classroom portion of the training, another employee of TSA, Brent Kress, claimed to have been sexually harassed by one of the trainers.[1] (Docket 32-5, Ex. 4 at 2.) Kress attempted to obtain legal advice about the claim from Robinson prior to the on-the-job training portion of the training process.[2] (Id.) One of the trainers was aware that Robinson had talked to Kress and tried to obtain information about their discussion from Robinson, but Robinson refused to disclose what was said on the basis of the attorney-client privilege. (Id.) The trainer became upset with Robinson when he would not talk about what was said. (Id.)

During the on-the-job training period, Robinson's assessor/trainer, Karan Blakeslee, made comments to Robinson about another trainee, David Ford. (Id.) Blakeslee said that she liked Ford, that she thought he was handsome and cute, and that she wanted to take him home. (Id.; Robinson Dep., Docket 21-17, at 18-19.) Robinson eventually asked Blakeslee to stop

---

[1] The training was provided by AIS/Boeing (Boeing) and its employees.

[2] Robinson is a licensed attorney in South Dakota.

making those comments because he found them to be offensive. (Docket 32-5, Ex. 4 at 2.)

After Robinson asked Blakeslee to stop commenting about Ford, Blakeslee became upset and began to treat Robinson differently by requiring him to wear his gloves at all times and otherwise harassing him. (Id.; Robinson Dep., Docket 21-17, at 19.) Blakeslee continued to make similar comments about Ford. (Docket 32-5, Ex. 4 at 2.) Robinson then talked to Blakeslee's superior, John Sousa, about her comments. (Id. at 2-3.) Sousa did not address Robinson's concerns and began treating Robinson differently by no longer providing him additional supervisory training. (Id. at 3; Robinson Dep., Docket 33, Ex. 15 at 2.) Ford, however, continued to receive supervisory training from Sousa. (Docket 32-5, Ex. 4 at 3.) Robinson also informed his immediate TSA supervisor, Sandra Erickson, about the differential treatment that he was experiencing, but Erickson told Robinson that she was not going to interfere with the on-the-job training provided by the Boeing trainers. (Id.) On the last day of the on-the-job training, Robinson overheard Erickson, Sousa, and Sousa's boss talking about him. (Id.) During that conversation, Robinson heard one of them say "Can we do that, he'll probably sue us." (Id.)

After completing the on-the-job training segment, Robinson was not allowed to supervise. (Id.) Ford became Robinson's supervisor. (Id.)

3

Robinson was embarrassed by the fact that he was not allowed to be a supervisor because the other TSA employees knew that he had been hired as a supervisor and repeatedly asked him why he was not a supervisor. (Id.; Robinson Dep., Docket 33, Ex. 15 at 5.)

While in a public restroom, Robinson talked to the local Federal Security Director, Clarence Putnam, about how he had been sexually harassed and not been allowed to be a supervisor. (Robinson Dep., Docket 33, Ex. 15 at 5.) The conversation ended because Robinson was embarrassed by having to talk about his situation in front of strangers that were present in the restroom. (Id.)

Younger males and females were appointed to be "acting" supervisors, and one woman who was the same age as Robinson was made an "acting" supervisor over Robinson. (Docket 32-5, Ex. 4 at 5.) On December 22, 2002, Robinson was given the choice of either accepting a supervisory position that required him to work on Christmas Eve at 3:30 a.m. or being fired. (Id. at 3-4.) Robinson chose to take the supervisory position even though he was not scheduled to work on Christmas Eve or Christmas. (Id. at 4.)

While a supervisor, Robinson received limited guidance and was not allowed to obtain assistance or additional supervisory training from other supervisors. (Id. at 6.) Robinson never knowingly violated the standard

operating procedure.  (Robinson Dep., Docket 33, Ex. 15 at 7.)  When he did

deviate from the standard operating procedure with regard to the sequence

for screening luggage, he obtained prior approval.  (Id. at 8-9.)  Robinson

received verbal reprimands from his superiors, but he never received a letter

of counseling even though written documentation existed.  (Id. at 14-15;

Robinson Dep., Docket 33-2, Ex. 15 part 2 at 4-5.)  On January 21, 2003,

Robinson was placed on administrative leave and was subsequently

terminated on March 3, 2003.  (Docket 33-5, Ex. 18 at 2.)

Robinson first contacted an Equal Employment Opportunity (EEO)

counselor on April 3, 2003.  (EEO Counselor's Report, Docket 21-4, Ex. 3.)

After denying Robinson's initial claim, the EEO Commission denied

Robinson's request for reconsideration on March 14, 2008.  (U.S. EEO

Commission, Docket 33-6, Ex. 19 at 2.)  Robinson then filed this suit

alleging a hostile work environment, retaliation based on prior EEO activity,

sexual harassment, and age discrimination.  (Complaint, Docket 1.)

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that

summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes over facts that might

affect the outcome of the case under the governing substantive law will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u>

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

**I.     Exhaustion of Administrative Remedies**

**A.     The Scope of the Administrative Charge**

Napolitano argues that Robinson is limited to those claims asserted in an EEO letter that outlined Robinson's formal discrimination complaint. Because Robinson's claim of age discrimination and retaliation for his EEO

activity involving Kress[3] are not mentioned in the list, Napolitano contends

those claims should be dismissed. Napolitano also contends that all other

incidents of alleged discrimination and retaliation should be dismissed

because they were not part of the investigation.

"A Title VII plaintiff must exhaust administrative remedies before

bringing suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th

Cir. 2006). Similarly, "[a]n exhaustion of administrative remedies is a

condition precedent to the filing of an action under the ADEA in federal

court." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005) (citation

omitted). "The reason for requiring the pursuit of administrative remedies

first is to provide the EEOC with an initial opportunity to investigate

allegations of employment discrimination and to work with the parties

toward voluntary compliance and conciliation." Id. at 585 (citation omitted).

"The claims of employment discrimination in the complaint may be as

broad as the scope of the EEOC investigation which reasonably could be

expected to result from the administrative charge." Id. An administrative

charge is "liberally construe[d]" for purposes of determining whether a

plaintiff has exhausted the administrative remedies. Id. "But there is a

---

[3] Robinson claims to have been retaliated against for undertaking two separate EEO activities: (1) supporting another employee, Kress, who had made a sexual harassment complaint; and (2) reporting his own sexual harassment claim involving his on-the-job training assessor/trainer, Blakeslee. (Docket 32-5, Ex. 4 at 9.)

difference between liberally reading a claim which 'lacks specificity,' and inventing, ex nihilo, a claim which simply was not made." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996).  In the context of exhaustion of administrative remedies, a plaintiff is allowed to bring the claim that was specifically alleged, "along with allegations that are 'like or reasonably related' to that claim[.]" Parisi, 400 F.3d at 585 (quoting Shannon, 72 F.3d at 684) (citation omitted).

The EEO letter that summarized Robinson's complaint specifically stated that Robinson's claims included "discrimination based on . . . age . . . and reprisal (for opposition to unlawful discriminatory policies and practices), from November 10, 2002 through March 2003, when [Robinson] was harassed by being subjected to a pattern of continued retaliation while employed . . . at the Sioux Falls Regional Airport[.]"  (Docket 32-5, Ex. 4 at 1.)  Thus, Robinson's age discrimination claim and retaliation claim with regard to reporting his sexual harassment are clearly within the scope of the administrative charge and the ensuing investigation.

With regard to the hostile work environment claim, both the initial EEO letter that outlined Robinson's discrimination claims, as well as the EEO investigator's questions, specifically state that Robinson claimed to have been "subjected to a pattern of continued retaliation while employed[.]" (Docket 21-2, Ex. 1 at 1; Docket 32-5, Ex. 4 at 2-3.)  In Parisi, the Eighth

Circuit Court of Appeals recognized that " '[t]he proper exhaustion of administrative remedies gives the plaintiff a green light to bring [an] employment-discrimination claim, along with allegations that are "like or reasonably related" to that claim, in federal court.' " Parisi, 400 F.3d at 585 (citation omitted). A hostile work environment claim is reasonably related to the claim of being "subjected to a pattern of continued retaliation." Cf. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("A hostile work environment claim is composed of a series of separate acts[.]"). Thus, Robinson's hostile work environment claim was reasonably expected to be within the scope of the EEOC's investigation. Parisi, 400 F.3d at 585

Robinson's sexual harassment claim involving his assessor/trainer, Blakeslee, and Robinson's claim of retaliation for partaking in EEO activity that involved talking to Kress about Kress's sexual harassment claim were not specifically set out in the EEO letter sent to Robinson on April 15, 2004. (Docket 33-5, Ex. 18.) While these claims were not specifically set forth in the EEO letter, both claims were nonetheless within the "scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." Parisi, 400 F.3d at 585.

Robinson discussed both matters in his formal administrative complaint.[4] (Docket 34, Ex. 20 at 3.) With regard to Robinson's sexual harassment claim, the EEO letter outlining the administrative charge recognized that Robinson had "informed the senior OJT Assessor that [he] had been sexually harassed[.]" (Docket 21-2, Ex. 1 at 1.) As to Robinson's retaliation claim in relation to Kress's sexual harassment claim, the EEO letter implicitly recognized that he claimed to have been subjected to retaliation for partaking in more than one EEO activity, which would reasonably include Robinson's discussion with Kress about Kress's sexual harassment claim. (Docket 33-5, Ex. 18 at 1 (stating that Robinson's allegations were premised on "reprisal (for opposition to unlawful discriminatory policies and practices)" (emphasis added).) Finally, in his response to the questions posed by an EEO investigator, Robinson again discussed, in detail, his conversation with Kress about Kress's sexual harassment claim. (Docket 32-5, Ex. 4 at 2.) Therefore, Robinson's claims of sexual harassment and retaliation in relation to Kress's sexual harassment claim were both within the scope of the investigation that "reasonably could be expected" to result from the administrative charge. Parisi, 400 F.3d at 585. See also Weirich v. Horst Realty Corp., LLC, 2007

_____

[4] Robinson's claim of retaliation in relation to Kress's sexual harassment claim was specifically listed on the front cover of the administrative charge. (Docket 34, Ex. 20 at 1.)

WL 2071904, at *3 (E.D. Pa. July 13, 2007) (noting that the actual scope of the investigation "is indicative of an investigation that would be reasonably expected to grow out of plaintiff's charges").

## B.     The 45-Day Time Period

Napolitano also argues that Robinson's claims are untimely because Robinson failed to contact an EEO counselor within the 45-day time period required by 29 C.F.R. § 1614.105(a)(1).[5]  According to Napolitano, there are no acts in the complaint, except Robinson's termination, that could have occurred after February 17, 2003, because Robinson was placed on administrative leave on January 21, 2003.  Robinson argues that the court should overlook any untimeliness that exists because he contacted an EEO counselor within 45 days of his termination.  Robinson also argues that he did everything he could to make an EEO complaint during his employment because he had talked to numerous TSA officials, including the local Federal Security Director, Putnam.

"[E]mployees of federal government agencies who believe that they have been discriminated against 'must consult an EEO Counselor prior to filing a complaint in order to try to informally resolve the matter.' "  Bailey v.

---

[5] Under 29 C.F.R. § 1614.105(a)(1), Robinson was required to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  Id.

U.S. Postal Serv., 208 F.3d 652, 654 (8th Cir. 2000) (citation omitted).

"Such employees 'must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory.' " Id. at 654 (citation omitted). "An aggrieved employee who can show that he 'was not notified of the time limits and was not otherwise aware of them' may be absolved from any failure to comply with the 45-day filing deadline.' " Bailey, 208 F.3d at 654 (citation omitted).

### 1.   Robinson's Retaliation Claims

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the plaintiff alleged "that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired." Id. at 114. The Supreme Court held that the plaintiff was unable to recover "for discrete acts of discrimination or retaliation that occur outside the statutory time period." Id. at 105. See also Betz, 578 F.3d at 937-38 (applying Morgan to the 45-day time period for reporting a discrete act to an EEO counselor).

With regard to claims of retaliation, the Supreme Court has emphasized that "[a] discrete retaliatory . . . act 'occurred' on the day that it 'happened.' " Morgan, 536 U.S. at 110. Once a discrete act of retaliation occurs, the 45-day time period to initiate contact with an EEO counselor begins to run. See Betz, 578 F.3d at 937-38. If an EEO counselor is not

contacted about that discrete act within the applicable time period, and there is no justification for the delay, the plaintiff has failed to exhaust his administrative remedies.  See id.

The Eighth Circuit Court of Appeals has recognized that " 'a complainant may satisfy the criterion of EEO Counselor contact by initiating contact with any agency official logically connected with the EEO process, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process.' " Culpepper v. Schafer, 548 F.3d 1119, 1122 (8th Cir. 2008) (quoting E.E.O.C. Management Directive 110, at ch.2, § I.A, n.1 (Nov. 9, 1999) (additional citations omitted)).  In Culpepper, the court emphasized that "the dispositive question is not whether [plaintiff] contacted an EEO counselor." Id. at 1123.  Rather, the question is whether the plaintiff "satisfied the EEO counselor contact requirement even though [the plaintiff] did not contact an EEO counselor." Id.  In order to do so, the plaintiff must have "initiat[ed] contact with [an] agency official logically connected with the EEO process" and "exhibit[ed] an intent to begin the EEO process." Id.

Robinson initiated contact with numerous supervisors, including the local Federal Security Director, Putnam, about his sexual harassment and

retaliation claims in relation to him not being a supervisor.[6]  (Robinson Dep. Docket 33, Ex. 15 at 4-5; Docket 32-5, Ex. 4 at 2-4.)  Robinson argues that Putnam was the closest thing to an EEO counselor at his workplace, and Napolitano has not refuted that assertion.  These facts are therefore sufficient to show that Robinson initiated contact with an agency official that was "logically connected with the EEO process" when he talked to Putnam.  See Osuagwu v. Peake, Doc. No. 0120081307, 2008 WL 2264405, at *1 (E.E.O.C. May 20, 2008) ("While there may be some question about whether these officials are logically connected with the EEO process, we find that this contact at least gave rise to a duty on the part of the agency to direct complainant to an EEO counselor within the limitation period." (citation omitted)); Buckli v. Caldera, Doc. No. 5970223, 1998 WL 1944318, at *2 (E.E.O.C. Oct. 8, 1998) ("[T]he commission has found that in the case of sexual harassment, contact with a supervisory official, who was not an EEO Counselor, was sufficient to constitute EEO contact." (citation omitted)); see also Nygren v. Ashcroft, 109 Fed. Appx. 816, 819 n.5 (8th Cir.

_____

[6] Though the exact date of Robinson's discussion with Putnam is not clear, the discussion appears to have occurred between December 3, 2002, and December 24, 2002, which was when Robinson began his position as supervisor.  (Docket 34, Ex. 20 at 4-5 (stating that Robinson contacted the HR Manager for Boeing about his sexual harassment and retaliation claims on December 3, 2002)).

2004) (unpublished per curiam) ("[T]he contact person can include a supervisor." (citing Buckli, 1998 WL 1944318, at *2)).

In Culpepper and Nygren, the Eighth Circuit Court of Appeals addressed the issue of whether a plaintiff had exhibited an intent to begin the EEO process. See Culpepper, 548 F.3d at 1123; Nygren, 109 Fed. Appx. at 819. In Nygren, the Eighth Circuit Court of Appeals found that the plaintiff did not exhibit an intent to begin the EEO process when she talked with an EEO counselor and did not "complete a written request for counseling during her initial meeting . . . or otherwise file a complaint." Id. (citation omitted). Rather, the plaintiff's statements "indicate[d] that she was not interested in pursuing the matter unless [the] conduct resumed." Id. Conversely, the plaintiff in Culpepper wrote letters to the director of the agency's Office of Civil Rights that announced, "in unequivocal terms," the plaintiff's intent to begin the EEO process." Culpepper, 548 F.3d at 1123 (noting that the plaintiff's letters included the statement "consider this my official contact to begin the process" (emphasis removed)).

Here, Robinson argues that he thought his sexual harassment and retaliation claims would be remedied by Putnam. Robinson asked Putnam, while the two were in a public restroom, " 'Can I talk to you sometime about a problem?' " (Robinson Dep., Docket 33, Ex. 15 at 5) Putnam replied, " 'Well, tell me right here.' " (Id.) Robinson then reluctantly proceeded to

15

tell his "story about sexual harassment and all this kind of stuff and not being a supervisor." (Id.)  The conversation ended when Robinson said " 'I'll talk to you some other time or you can get in touch with me.' " (Id.) Putnam told Robinson that he would look into Robinson's status as a supervisor and "would get back to him."  (Docket 32-14, Ex. 13 at 4.)

The court must view the facts in the light most favorable to Robinson and draw all reasonable inferences from the facts in Robinson's favor because he is the nonmoving party in this motion for summary judgment. Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  Robinson talked to Putnam about his sexual harassment claim and not being a supervisor.  Such a conversation, coupled with Putnam's assurance that he would look into the matter and get back to Robinson, sufficiently demonstrates that Robinson exhibited an intent to begin the EEO process. See Buckli, 1998 WL 1944318, at *2 (finding that the complainant's "contact with agency officials regarding the alleged sexual harassment . . . was sufficient to constitute EEO contact since the agency was clearly put on notice regarding her allegations" when the complainant was "assured that the matter would be handled").  Because Robinson "initiat[ed] contact with [an] agency official logically connected with the EEO process" and "exhibit[ed] an intent to begin the EEO process," he exhausted his administrative remedies with regard to the retaliation claims involving the

acts of denying him supervisory training during his on-the-job training and denying him a supervisory position.  See Culpepper, 548 F.3d at 1123.

Robinson's argument that he initiated contact with an EEO counselor by contacting his supervisors does not, however, extend to all of the alleged acts of retaliation.  After Robinson's discussion with Putnam in the restroom, several other acts of retaliation allegedly occurred on or before January 21, 2003.  These alleged acts of retaliation include the following: (1) requiring Robinson to be a supervisor on his days off, beginning on Christmas Eve; (2) not providing supervisory training after Robinson became a supervisor; (3) excluding Robinson from supervisor meetings; (4) attempting to discredit Robinson by informing the airlines of the results of time studies; and (5) placing Robinson on administrative leave on January 21, 2003.  (Docket 1, at 9-12, 14.)  The first time Robinson contacted anyone about these acts was on April 3, 2003, when he contacted an EEO counselor, which was beyond 45 days of their occurrence.[7]  (EEO Counselor's Report, Docket 21-4, Ex. 3 at 1.)

Robinson argues that the EEOC's acceptance of his complaint shows that he satisfied the timing requirements.  Robinson fails to identify any support for this proposition.  Moreover, the Eighth Circuit Court of Appeals has indicated, albeit implicitly, that the EEOC's acceptance of the complaint

---

[7]Robinson has not cited anything in the record to indicate otherwise.

is insufficient to satisfy the timing requirements for bringing the claims into federal court.  See Betz v. Chertoff, 578 F.3d 929, 937 (8th Cir. 2009) (upholding the trial court's grant of summary judgment as to those events that occurred outside of the 45-day time period); see also Adair v. Broadlawns Med. Ctr., 102 F. Supp. 2d. 1092, 1096 n.2 (S.D. Iowa 1999) ("The mere issuance of a right-to-sue letter, however, does not necessarily mean a claimant has exhausted her administrative remedies and satisfied a prerequisite for filing suit in federal court.").

The court also rejects Robinson's argument that he was not informed about his EEO rights and that his work and break areas were not properly posted.  Robinson fails to identify any evidence to support that assertion. The only evidence pertaining to this issue reveals that Robinson knew about his rights and obligation to contact an EEO counselor within 45 days of the event and that he was provided a phone number for contacting an EEO counselor on December 19, 2002.[8]  (Docket 21-5, Ex. 4 at 1-2.)

As to the alleged retaliatory acts of writing letters of counseling and gathering negative comments from Robinson's co-workers, Robinson argues

---

[8] The court also notes that prior to the alleged incidents in the complaint, Robinson was an attorney in an employment discrimination case against the United States Postal Service that also involved timely filing issues.  See Robinson v. Potter, 453 F.3d 990, 993 (8th Cir. 2006) (noting that the plaintiff's "complaint lingered for several years due to a question as to whether it was timely filed, but in March 1997, she won the right to a hearing on the merits").

that he was not aware that these acts had occurred until after he had been terminated. Under 29 C.F.R. § 1614.105(a)(2), the 45-day time limit is to be extended if a complainant reasonably did not know of the alleged acts. Napolitano has not offered any evidence that Robinson either knew, or should have known, that the written letters of counseling or the written complaints by Robinson's co-workers existed prior to Robinson's initial contact with an EEO counselor. Thus, these alleged acts of retaliation are deemed to have been timely raised.

Napolitano's motion for summary judgment is therefore granted with regard to Robinson's retaliation claims as to those alleged acts of retaliation that Robinson had reason to know of and that occurred between Robinson's conversation with Putnam and February 17, 2003. See Wedow v. City of Kansas City, 442 F.3d 661, 671 (8th Cir. 2006) (affirming trial court's decision to limit recovery to only those acts that occurred within the limitations period while other discrete acts that occurred outside the limitations period were admitted into evidence only for purposes of showing discriminatory intent (citing Morgan, 536 U.S. at 113-114)). Robinson's retaliation claims involving the stopping of his supervisor training, not being a supervisor, the written letters of counseling, the written employee complaints, and his termination are timely under the 45-day rule.

## 2.    Robinson's Hostile Work Environment Claim

"Hostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." Morgan, 536 U.S. at 115 (citation omitted).  A hostile work environment develops "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. (citations omitted). Therefore, hostile work environment claims "are based on the cumulative effect of individual acts." Id. "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105.  Thus, "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Id. at 120.

In this case, Robinson's termination shortly after becoming a supervisor is part of the same hostile work environment that Robinson complains of with regard to being denied a supervisor position from the beginning.  Napolitano concedes that Robinson contacted an EEO counselor within 45 days of his termination.  Thus, summary judgment for failing to exhaust administrative remedies is inappropriate with regard to Robinson's

hostile work environment claim because the act of terminating Robinson occurred within 45 days of Robinson's contact with an EEO counselor.  See Morgan, 536 U.S. at 117 ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); Betz, 578 F.3d at 937-38 (recognizing the holding in Morgan while analyzing the requirement that a plaintiff must contact an EEO counselor within the 45-day time period).  Thus, Napolitano's motion for summary judgment for failure to exhaust administrative remedies is denied as to Robinson's hostile work environment claim.

### 3. Robinson's Age Discrimination and Sexual Harassment Claims

A review of the record reveals that Robinson's age discrimination claim first appeared on April 3, 2003, when he first contacted an EEO counselor.  Robinson fails to address why he failed to contact an EEO counselor within 45 days of the alleged age discrimination with regard to those discrete acts that occurred prior to Robinson's termination.  Robinson's argument that he had talked to his supervisors about his claims only pertains to Robinson's sexual harassment and retaliation claims.  (Pl.'s Mem. in Opp'n to Summ. J., Docket 29, at 9-10).  Moreover, neither Robinson's deposition, affidavits, briefs, nor statement of material facts

21

suggests that Robinson discussed the matter of age discrimination with Putnam or any other supervisor in a timely manner.[9]

The only argument that could apply is Robinson's argument that he was not informed about his EEO rights and that his work area and break area were not properly posted. As stated above, however, Robinson fails to identify any evidence to support that assertion, and the only evidence pertaining to this issue reveals that Robinson knew about his rights and obligation to contact an EEO counselor within 45 days of the event and was given a phone number to call if he wanted to contact an EEO counselor. (Docket 21-5, Ex. 4 at 1-2.)

Napolitano's motion for summary judgment is therefore granted with regard to Robinson's age discrimination claim as to those discrete acts of discrimination that occurred prior to February 17, 2003, which was 45 days before April 3, 2003, because Robinson failed to exhaust his administrative remedies. <u>Morgan</u>, 536 U.S. at 114 ("While [plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through . . . the date that he was fired, only incidents that

---

[9] The three exhibits relied on by Robinson, which include excerpts from Robinson's deposition and Robinson's and Putnam's answers to the EEO investigator's questions, do not demonstrate that Robinson talked to his supervisors about anything other than his sexual harassment and retaliation claims. The court has reviewed all exhibits submitted by both parties and was unable to identify any evidence showing that Robinson spoke with anyone about age discrimination prior to April 3, 2003.

took place within the timely filing period are actionable."); <u>Betz</u>, 578 F.3d at 938 ("Under the Court's holding in <u>Morgan</u>, 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.' " (quoting <u>Morgan</u>, 536 U.S. at 113)).

The issue of whether Robinson satisfied the 45-day timing requirement with regard to his sexual harassment claim involving Blakeslee is irrelevant because, as discussed below, Robinson has failed to show that a jury could reasonably rule in his favor. Thus, the court need not reach this issue.

## II.    Merits of the Remaining Claims

### A.    Robinson's Retaliation Claims

As noted in <u>Jackson v. United Parcel Service, Inc.</u>, 548 F.3d 1137 (8th Cir. 2008), when there is no direct evidence of retaliation, the burden-shifting analysis established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (2002) applies. <u>Jackson</u>, 548 F.3d at 1142 (citing <u>Kasper v. Federated Mut. Ins. Co.</u>, 425 F.3d 496, 502 (8th Cir. 2005). Under this framework, "plaintiff first must demonstrate a prima facie case of retaliation to survive summary judgment." <u>Id.</u> (internal quotation and citation omitted). "To meet this burden, [the plaintiff] must show that '(1) [h]e engaged in a protected activity, (2) [h]e suffered an adverse employment action, and

(3) there was a causal connection between the protected activity and the adverse employment action.' " Id. (citation omitted).

After the prima facie case is established, "the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their actions." Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973)). "[The defendant's] burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quotation and citation omitted). "If the employer successfully makes this showing, the burden shifts back to the plaintiff to show the employer's proffered reason was a pretext." Kasper, 425 F.3d at 502 (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (analyzing the application of the McDonnell Douglas burden-shifting analysis in the context of an age discrimination claim); see also McArdle v. Dell Prods. L.P., 293 Fed. Appx. 331, 339 (5th Cir. 2008) (unpublished opinion) (applying the reasoning in Reeves in a retaliation case).

### 1. Stopped Supervisor Training, Delayed Supervisor Position, Letters of Written Counseling, and Gathering Negative Comments from Robinson's Co-workers

The complaint alleges that Robinson was retaliated against when his supervisor training ended, his placement in a supervisor position was delayed, the letters of counseling were written, and the supervisors gathered negative comments from Robinson's co-workers. In order to establish a prima facie case of retaliation, Robinson must demonstrate that '(1) [h]e engaged in a protected activity, (2) [h]e suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.' " <u>Jackson</u>, 548 F.3d at 1142 (citation omitted). Thus, Robinson must demonstrate that he suffered from an adverse employment action in order for his retaliation claim to survive summary judgment. <u>See</u> <u>id.</u>

In <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53 (2006), the United States Supreme Court set forth the standard for determining whether an employer's action constitutes an adverse employment action for purposes of supporting a retaliation claim. <u>Id.</u> at 68. The Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> (internal quotation

and citation omitted). The Court also stated that "[c]ontext matters" for purposes of determining whether an act constitutes an adverse employment action. Id. at 69. The Eighth Circuit Court of Appeals has held that "[u]nder White, retaliatory actions must be material, producing significant rather than trivial harm." Devin v. Schwan's Home Service, Inc., 491 F.3d 778, 786 (8th Cir. 2007). "To be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.' " Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641 (8th Cir. 2009) (citation omitted).

In Higgins v. Gonzales, 481 F.3d 578 (8th Cir. 2007), the Eighth Circuit Court of Appeals addressed whether the failure to provide "appropriate mentoring, supervision or training" for the purpose of "setting [the employee] up to fail" amounted to an adverse employment action. Id. at 585 (internal quotation omitted). The Circuit Court held that the denial of training was not properly construed as an adverse employment action because there was no claim that the "denial led to a decrease in [the employee's] pay or benefits or affected [the employee's] future career prospects." Id. The Circuit Court went on to state that "[a]ny lack of mentoring or supervision simply does not rise to the level of an adverse employment action, as [the employee] cannot establish the absence had any effect on [the employee's] employment situation." Id.

Robinson repeatedly argues that he successfully completed all of his training requirements to become a supervisor.  In fact, Robinson became a supervisor shortly after he completed his on-the-job training and was paid at the supervisor pay rate.  Robinson also argues that he was never given a formal written letter of counseling while he was a supervisor.  Thus, there is no evidence that the denial of supervisor training had a significant effect on Robinson's employment either before he became a supervisor or after he became a supervisor.  Viewing the evidence in the light most favorable to Robinson, the denial of supervisor training does not amount to an adverse employment action in this case because there is no evidence that the absence of the training had any "materially adverse consequences" on his employment situation.  <u>Littleton</u>, 568 F.3d at 644.

In <u>Jackson v. United Parcel Service, Inc.</u>, 548 F.3d 1137 (8th Cir. 2008), the Eighth Circuit Court of Appeals addressed whether a delay in placing an employee in the alleged rightful position amounted to an adverse employment action.  <u>Id.</u> at 1142-43 ("UPS intended to reinstate [the plaintiff] as a feeder driver within a few weeks of her disqualification.  However, upon learning of her June 2006 EEOC charge, UPS decided to postpone Jackson's reinstatement and let the company's grievance process play out.").  The Circuit Court held that the denying of the employee's position for approximately two months was "not materially adverse" because "[a]fter the

27

grievance process, UPS promptly reinstated Jackson with full back pay and seniority." Id. at 1140, 1143.

While Robinson was not allowed to work as a supervisor immediately, he was allowed to work as a supervisor within 28 days after he completed his on-the-job training.  (Complaint, Docket 1.)  Even while Robinson was a baggage screener, he was paid at the supervisor rate.  There is no evidence that Robinson suffered any significant harm from the 28-day delay in being given a supervisor position.[10]  Viewing these facts in the light most favorable to Robinson, he did not suffer a materially adverse employment action because he did not experience any significant harm from the delay in becoming a supervisor.  See Jackson, 548 F.3d 1143. See also id. at 1141 (recognizing that in the context of a race and gender discrimination claim, "a demotion or denial of a promotion, even when accompanied by a loss in pay, is not an adverse employment action when it is corrected in a timely manner").

In addressing whether the letter of counseling and the gathering of complaints from other employees amount to an adverse employment action,

---

[10] Robinson's argument that he was subjected to ridicule from his fellow employees while he was a baggage screener does not raise the act of denying him a supervisory position to that of an adverse employment action.  See White, 548 U.S. at 68. (emphasizing that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience").

the Eighth Circuit Court of Appeals has held that "[e]ven if there was evidence that the complaints were false and retaliatory," the complaints did not amount to an adverse employment action because the employee did "not allege they led to a material change in [the employee's] employment status." Higgins, 481 F.3d at 586.  In Devin, 491 F.3d at 786, the Eighth Circuit Court of Appeals again held that the issuance of a "written notice for failing to turn in six new customer postcards and falsely report[ing] [that the employee] had twice as many customer complaints as other [employees]" did not amount to an adverse employment action because there was no "allege[d] suffering [of] any adverse consequences because of th[o]se actions." Id.  Thus, in order for the alleged acts of writing a letter of counseling and gathering complaints from Robinson's co-workers to amount to an adverse employment action, there must be some showing that those acts resulted in a material change in Robinson's employment status.

Robinson has not shown how the gathering of complaints from his co-workers and the written letters of counseling affected his employment situation.  Robinson argues that he did not know about the written letters of counseling and that he was unaware of the complaints filed by his co-workers.[11]  Thus, these actions do not constitute an adverse employment

---

[11] Robinson argues that these actions occurred after he was terminated as a means to justify his termination.

action because there is no evidence that these actions resulted in a material change in Robinson's employment status.  See id.; Higgins, 481 F.3d at 586.

Accordingly, Robinson is unable to satisfy his burden to demonstrate a prima facie case of retaliation with regard to the alleged acts of stopping his supervisor training, denying him a supervisor position for 28 days, writing the letters of counseling, and gathering complaints from his co-workers because these actions do not constitute an adverse employment action.  While none of these alleged acts constitute an adverse employment action individually, they may be relevant with regard to Robinson's retaliatory termination claim.

### 2.    Termination

There is sufficient evidence to support Robinson's prima facie case with regard to the retaliatory termination claim.  Napolitano does not dispute that Robinson engaged in protected activity and suffered an adverse employment action when he was terminated.  As to causation, a jury could reasonably conclude that the cause of Robinson's termination was his involvement with the two sexual harassment claims.  The following evidence supports the causation component: (1) the management knew of Robinson's involvement with the sexual harassment claims (Docket 32-5, Ex. 4 at 2-4); (2) the time frame between Robinson's termination and his involvement with the sexual harassment claims was short in light of the fact that he was

placed on administrative leave for over a month prior to his actual termination (Docket 33-5, Ex. 18 at 1-2); and (3) the events surrounding Robinson's entire term of employment, including his training and delay in becoming a supervisor. (Docket 32-5, Ex. 4 at 2-4.)

The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. <u>Thomas</u>, 483 F.3d at 528. Napolitano states that Robinson was terminated because of poor performance and failure to follow standard operating procedures. Napolitano points to evidence that Robinson's co-workers complained about his performance as a supervisor and that Robinson's supervisors documented incidents where Robinson failed to meet management's expectations. (Docket 21-6, Ex. 5; Docket 21-7.; Docket 21-8; Docket 21-11, Ex. 8.) There is also evidence that Robinson was terminated because he waited too long to report an incident that involved "suspicious persons." (Docket 21-11, Ex. 8 at 2.) This evidence is sufficient to demonstrate a legitimate reason for Robinson's termination.

The burden now shifts back to the employee to show the employer's proffered reason was a pretext. <u>Kasper</u>, 425 F.2d at 502. The following evidence identified by Robinson demonstrates pretext: (1) Robinson was never formally disciplined or given a written reprimand prior to being placed on administrative leave (Docket 32-10, Ex. 9 at 2-3); (2) Robinson obtained

consent from his supervisors when he deviated from standard operating procedure (Robinson Dep., Docket 33, Ex. 15 at 8-9); and (3) Robinson was previously threatened with being fired for a reason unrelated to his performance (Docket 32-5, Ex. 4 at 5). Thus, Robinson has met his pretext burden.

Now the issue becomes whether Robinson's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully" retaliated against Robinson because of his involvement with the sexual harassment claims. See Reeves, 530 U.S. at 148. A trier of fact could reasonably conclude that the evidence supporting Robinson's prima facie case, coupled with his evidence that the asserted reasons for his termination are pretext, is sufficient to rule in Robinson's favor. The jury could reasonably believe that the management treated Robinson as he claims they did prior to him becoming a supervisor and infer that Robinson was treated similarly after he became supervisor. That is, Robinson's prima facie case could reasonably become even stronger if the jury accepts Robinson's version of events with regard to him being denied supervisor training and a supervisor position.

Furthermore, the jury could reasonably conclude that Robinson was not fired based on his performance as a supervisor because he was never

formally disciplined or reprimanded as a supervisor. (Docket 32-10, Ex. 9 at 3.) As to the "suspicious persons" incident, the jury could reasonably conclude that Robinson's prior treatment by defendant, including the denial of his supervisory training, his delay in being given supervisor duties, and the other various circumstances surrounding his time as a supervisor, demonstrates that the decision to terminate Robinson had been made because of his involvement with the sexual harassment claims. If the jury finds that Napolitano's stated reasons for Robinson's termination were false reasons, the jury could reasonably infer that those false reasons demonstrate guilt. <u>Reeves</u>, 530 U.S. at 143 ("That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " (quoting <u>Texas Dept. of Comty Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)). Viewing the facts in the light most favorable to Robinson, a jury could reasonably conclude that Robinson was the victim of retaliation because he engaged in protected EEO activities, which is supported by Robinson's prior treatment and the use of pretextual reasons for his termination. Thus, Napolitano's motion is denied with regard to Robinson's retaliatory termination claim.

## B.     Robinson's Age Discrimination Claim[12]

"[A] plaintiff can establish a prima facie case of age discrimination if he can show that (1) he was at least forty years old; (2) he was terminated; (3) he was meeting his employer's reasonable expectations at the time of his termination; and (4) he was replaced by someone substantially younger." Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008) (citation omitted).  Where no "direct evidence of discrimination" is presented, the claim is then analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas[.]" Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Under this framework, after the prima facie case is established, "the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their actions.  If the defendants satisfy their burden, the burden shifts back to [the plaintiff] to show the defendants' proffered reason was pretextual." Id. at 528.  Then,"if the evidence creates (1) a fact issue as to whether [the defendant's] proffered reason is pretextual and (2) a reasonable inference that age was a determinative factor in his termination[,]" summary judgment is inappropriate.  Carraher v. Target Corp., 503 F.3d 714, 717

---

[12] The following discussion on Robinson's age discrimination claim only pertains to his termination because that is the only alleged act of age discrimination that Robinson reported to an EEO counselor within 45 days of its occurrence.  See Section I(B)(3) above.

(8th Cir. 2007). "In some cases, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.' " Id. at 717 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

Assuming without deciding that Robinson has established a prima facie claim and that defendant's proffered reasons for Robinson's termination were pretextual, there is no evidence that allows for "the reasonable inference that age was a determinative factor" in his termination. Id. (emphasis added). Robinson has not presented any evidence that age was ever discussed, referenced, or implied. In fact, Robinson fails to identify any evidence or present any argument in his brief in response to Napolitano's argument and supporting evidence. See Satcher v. Univ. of Ark., 558 F.3d 731, 735 (8th Cir. 2009) ("[I]t was [the plaintiff's] responsibility, not the District Court's, to come forward with evidence showing that factual issues existed. His failure to do that warranted the entry of summary judgment.")

In Robinson's Response to Defendant's Statement of Undisputed Material Facts (Docket 30, at 8), he cites to Exhibit 14 as evidence that all of the acting supervisors and leads were younger than Robinson. (Docket 32-15, Ex. 14.) Even if all of the acting supervisors and leads were younger

than Robinson, it does not reasonably follow that Robinson's subsequent termination was because of his age. Robinson admits that he never heard anyone say anything discouraging or derogatory about his age. (Docket 30, at 8.) Furthermore, Robinson was initially hired when he was at least 55 years old. (Docket 32-4, Ex. 3.) It is unlikely that an employer would "hire an older employee and then discriminate on the basis of age." Fitzgerald v. Action, Inc., 521 F.3d 867, 877 (8th Cir. 2008) (citing Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005)). Therefore, based on the record before the court, and drawing all reasonable inferences in favor of Robinson, "the evidence is insufficient to create a reasonable inference age was a determinative factor" in Robinson's termination. Id. at 877 (holding that the evidence was "insufficient to overcome the presumption created by the fact [the defendant] hired [the plaintiff] at age fifty"). Thus, Napolitano's motion for summary judgment is granted with regard to Robinson's claim that he was terminated on the basis of his age.

### C.    Robinson's Sexual Harassment Claim

Napolitano argues that Blakeslee's statements to Robinson did not rise to the level of actionable sexual harassment. The only acts in relation to Robinson's sexual harassment claim involved statements that were made by Blakeslee to Robinson along the lines of "how great Dave [Ford] was, how she thought he was so cute, [and] how she would like to take him home with

her[.]" (Robinson Dep., Docket 21-17, at 47-48.) While these statements were made "several times" over a week-and-a-half time period, Robinson did not know if they were made every day during that time. (Id. at 49.) Robinson has not responded to this issue in Napolitano's motion for summary judgment.

These statements are insufficient to allow a reasonable jury to find in Robinson's favor with regard to his sexual harassment claim. See LeGrand v. Area Res. for Cmty. & Human Servs., 394 F.3d 1098, 1101 (8th Cir. 2005) ("Sexual harassment standards are demanding–to be actionable, conduct must be extreme and not merely rude or unpleasant." (internal quotations and citations omitted)); Tuggle v. Mangan, 348 F.3d 714, 722 (8th Cir. 2003) (holding that even though the plaintiff "was clearly subjected to harassing conduct" when another employee made numerous comments based on the her sex and photographed her rear end, it was not "actionable conduct"). Simply put, Blakeslee's several comments, without more, do not amount to actionable conduct. Thus, Napolitano's motion for summary judgment is granted with regard to Robinson's sexual harassment claim.

### D. Robinson's Hostile Work Environment Claim

Napolitano has not briefed the issue of Robinson's hostile work environment claim. Accordingly, the motion for summary judgment is denied as to this claim.

**CONCLUSION**

To summarize, Napolitano's motion for summary judgment is granted with regard to all of the age discrimination claims and the sexual harassment claim involving Blakeslee. Napolitano's motion for summary judgment is denied as to Robinson's hostile work environment claim.

With regard to Robinson's retaliation claims, summary judgment is denied with regard to the retaliatory termination claim. Summary judgment is granted with regard to the following alleged acts of retaliation: (1) stopping Robinson's supervisory training during his on-the-job training; (2) not allowing Robinson to be a supervisor after he completed his on-the-job training; (3) writing letters of written counseling; (4) gathering negative comments from Robinson's co-workers; (5) requiring Robinson to be a supervisor on his days off; (6) not providing supervisory training after Robinson became a supervisor; (7) excluding Robinson from supervisor meetings; (8) attempting to discredit Robinson by informing the airlines of the results of time studies; and (9) placing Robinson on administrative leave.

Accordingly, it is hereby

ORDERED that Napolitano's motion for summary judgment (Docket 20) is granted in part and denied in part as set forth herein;

IT IS FURTHER ORDERED that Robinson's motion for oral argument (Docket 44) is denied as moot; and

IT IS FURTHER ORDERED that Napolitano's motion to stay discovery (Docket 49) is denied as moot.

Dated January 26, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE